# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK



ORIGINAL

## CV 16          4203

Leodegario Salvador

      **Plaintiff**

      **vs.**

Touro University and Touro Colleges
Jacob D. Fuchsberg Law Center
Dr. Allan Kadish
Lawrence Raful
Susan Thompson
Daniel Derby
Paula Kutch
Michele Kaminski
Yelena Elkina
TouroUniversity and Touro Colleges Vice-President,
Provost, & Board of Governors


      **Defendants**

Civil Case No.:

**Civil
Rights
Complaint
Pursuant to
  42 U.S.C. § 1983**

COGAN, J.

2016 JUL 28 PM 3:57
FILED CLERK

---

**Plaintiff demands a trial by Jury**

**Plaintiff in the above-caption action, alleges as follows :**

### Jurisdiction

1. This is a civil action and that the plaintiff is seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343 (3) and (4) and 2202. Specifically, this Court has jurisdiction over

this case for the following reason meeting both the requirements of diversity and federal question elements:

a.   The case involves a federal question
b.   The amount in controversy exceeds $75,000
c.   The parties are citizens of different States & Countries

<u>Parties</u>

2.   **Plaintiff**        :   Leodegario D.  Salvador ( Not a United States Citizen but a permanent  resident of the United States)

Address               :   Residence , Royal Highlands - 4404 Grey Spencer Drive,
                             Las Vegas,  NV 89141
                            • Office , 2770 S Maryland Pkwy, Las Vegas, NV 89109

3.  Defendants  :   a.   Touro University and Touro Colleges
                             1310 Club Drive
                             Vallejo , CA 94592

                             Touro University/College Nevada
                             874 American Pacific Drive
                             Henderson, NV 89014

                             Jacob D. Fuchsberg Law Center
                             225 Eastview Drive, Central Islip, NY 11722

                            • 500 7th Avenue, NY, NY 10018

                       b.   Dr. Allan Kadish
                             President and CEO
                             Touro University and Touro Colleges
                             1310 Club Drive, Vallejo, CA94592

                       c.   Dean(Former) Lawrence Raful
                             Jacob D. Fuchsberg Law Center
                             225 Eastview Drive, Central Islip, NY 11722

                       d.   Daniel Derby
                             Touro Law College
                             Director of the LLM  Program
                             225 Eastview Drive, Central Islip, NY 11722

e.   **Susan Thompson, PhD.**
     **Touro Law College**
     **Director of Admissions**
     **225 Eastview Drive, Central Islip, NY 11722**

f.   **Paula Kutch**
     **Touro Law College**
     **Registrar**
     **225 Eastview Drive, Central Islip, NY 11722**

g.   **Michele Kaminski**
     **Touro Law College**
     **Director of Financial Aid**
     **225 Eastview Drive, Central Islip, NY 11722**

h.   **Yelena Elkina**
     **Touro University/Colleges**
     **Collections Department**
     **500 7th Avenue, 5th Floor -Bursar**
     **New York, NY 10018**

i.   **Touro University & College Vice President, Provost and all Touro University and College Board of Governors**

**Federal questions addressed to this Court .**

a.  **Facts : A plaintiff applied at an LLM American Studies Program ( JD Entry degree not required to be ABA approved) and was issued written appropriately signed acceptance by the designated LLM Director ( Exhibit 1) and on that basis the student took Federal Student Loans ( Exhibit 2 Plaintiff started paying in June 2012, resumed paying in 2014 until March 25, 2016 until the loan was differed, even Navient records apparently were altered) and after completing the program, the school denied the issuance of the degree, paid back his student loan, left him for more than $8,000 more Federal loans, reclassify the student from matriculated to non-matriculated arbitrarily after the completion of the degree and after all the financial obligations were paid.**

**Can the administrators of a Law School manipulate the Federal Loan Programs? Touro University and Colleges are recipients of Federal Loan Programs.**

b.  **Facts : The plaintiff applied on the LLM American Studies Program ( JD Entry degree not required to be ABA approved). He was given a written signed acceptance letter on this program. Unknowingly, he was placed at the other LLM General Program ( Entry Level in this program is JD from ABA approved program (**

Exhibit 3).   There are 2 LLM Programs at Touro Law College . First, LLM in American Studies Program, the Director was (is) Daniel Derby. Second, LLM General, the Director was (is) Dr. Charlotte Taylor. When Daniel Derby failed to report for work as he was hospitalized, The plaintiff went to the registrar's office and asked how he could register in the absence of Daniel Derby. The office of Paula Kutch told the student to have Dr. Taylor sign the enrollment form and so the student let Dr. Taylor signed the form.  When Daniel Derby learned this when he came back from the hospital, he was furious and told Leodegario Salvador that there were no students in the LLM General Program. Patricia Sturm , a classmate of the plaintiff on Criminal Procedure told  him that in order for overstaying JD student can get a Federal Student Loans, Touro Adminstrators put them on the LLM General Program to be able to get the loan ( This statements are not concocted ) Patricia Sturm, Danielle  Laibowitz, Peggy Michelle, Kathleen Tirelli    and Leodegario Salvador were placed at the LLM General Program  as shown on the student directory for 2011-2012. If Daniel Derby was correct why are those five names appeared as students under the LLM General Prgram when there were no enrollees according to Daniel Derby? Why did they put Leodegario Salvador in that program? ( The plaintiff requests this Court to issue subpoena duces tecum for this) ( See Exhibit 3).

Are the administrators of Touro Law permitted to do the shifting of students from one program to the other in order that they can avail of the Federal Student Loans? The LLM General Program has no enrollees according to Daniel Derby when he got mad of the plaintiff. There are 5 listed on the student directory. Would this be allowed for a university and a college to do using federal student loan programs?

Leodegario Salvador was never in the LLM General Program. The plaintiff asked Daniel Derby if he can be in this program to take lower than 16 credits during his last semester at Touro because he wants to finish the program in 3 semesters.

c.  Can the administrators be allowed to discriminate students ( recipient of Federal student loans), *allow other holders of online JD  to graduate (* Vince Henderson,  etc.) but not the plaintiff ? Discriminative policy ( Please issue subpoena duces tecum for all prior students who graduated under the LLM American Studies Program.

d.  Can the administrators freely destroy the  character and credit of their student on the basis of returning back a Federal student loans? The dates of paying back  the loan also need to be presented in Court for which a subpoena duces tecum is needed. The dates were manipulated.

e.  Can this case be tried in an unbiased Court outside New York ? The case was initially filled in a Court with the wrong jurisdiction. The plaintiff is domiciled in State of Nevada. He filed his Federal income taxes in 2011, 2012, 2013, 2014 & 2015 ( Exhibit 4)in Nevada. His  health insurance was purchased in Nevada  ( Exhibit 5).

f.  Can an administrator concoct lies such as Paula Kutch that Leodegario attempted to transfer at the LLM General  when she was the one who sent him to that office just for signature on his last semester at school? He asked Derby on the email, if he can just take 24 credits to finish an LLM degree. Leodegario inquired about the other program but did not apply. Paula knew the reality that there were set up procedures to be accepted in a program. Plaintiff asked Dr. Taylor whether the courses are appropriate to be able to graduate? The plaintiff did not even know who Dr. Taylor was. Leodegario was there to get the signature in order to be able to enroll as Derby was  in the hospital. Why not disclose the truth to the Court rather than  lie in the affidavit? The plaintiff did not know and did not pay attention to the other program when he enrolled.

Paula Kutch scheduled a graduation interview Jan. 19, 2012  but she discovered the student records were missing. She did not know what  to do. Concocted lies . All records were submitted to Dr. Susan Thompson, unofficial transcripts and applications were at the office of the admissions department. Derby and Kutch connived to  manipulate the records of the school. Susan Thomson office has all the applications. No student applicant can go  to Derby or Paula right away. Why did Paula relied on Derby rather than  Susan Thompson, the director of admissions? It was Susan Thompson who have the records manipulated by Daniel Derby. If Paula knew that the plaintiff was un-matriculated in September 2011, Why did she schedule a graduation interview on January 19, 2012? On that day, Paula could not find Daniel. It was 11:59 p.m. midnight when Daniel responded to her.  She submitted a report that she completed the graduation interview on 1/19/2012. Did Paula slept in the school?    Daniel affidavit was a lie too. On his notes on 1/21/2011 he noted in his own hand writing that he reviewed the John Jay College and Doctoral CUNY credentials of the plaintiff as a sort of apparent basis of English proficiency for attending the LLM program. He knew Novus University. There is something hidden in the motive of Daniel Derby in doing this that the plaintiff wants to know.   The facts that he discerned about the plaintiff before and after the interview were totally inconsistent to the his concocted self-serving affidavit. He came up with incoherent  excuse , not based on records, when he finally decided to turn the credentials of the plaintiff to the registrar's office.

Do they (Paula and Daniel) have the power to manipulate records and arbitrarily change the status of a  student   from matriculated to non-matriculated when the student was granted a federal student loan? Lied on their affidavits (Exhibit 5) Manipulated the records. The transcript of records of the plaintiff which came from Novus University  was altered, stamped twice by Paula Kutch for unknown reasons. She may have received the transcript earlier (Exhibit 6)

g.  What power were given to these administrators who are recipients of Federal Student Loans? Paula and Daniel  evidently manipulated the records.

Why did she not state that because Derby was in the Hospital, and sent Leodegario to Dr. Taylor so that he can enroll because Derby was hospitalized?

Why was it that Dr. Thompson was not consulted on how records of students are taken from them and how screenings were made? Why was there a need to manipulate? It was in January 2011 that Paula has the unofficial records and she received the official ones were sent to her in March or April 2011. She discovered that they were missing in January 18-19, 2012 , only to find out that they were with Daniel Derby? (All documents essays and unofficial transcripts were emailed and presented  personally  to Dr. SusanThompson a subpoena duces tecum is requested from the Court  in this regards). Kutch affidavit misled the Court and she was lying to cover up both Derby and herself for the missing documents. It was conclusively presumed that they were doing something on the student missing records but  Susan Thompson has all the emailed ones and personal  photo-copies including immigration status, driver license and health records. It was Jan. 19, 2012, when Daniel Derby and Paula connived to manipulate the student records. At that time the student already finished the degree (Exhibit 5).

h. Can this Court determine who placed Leodegario Salvador on the General LLM Program ? He borrowed Federal Student loans based on LLM American Studies Program not LLM General Program. Why were students placed in the LLM General program,  when Derby claimed that there were no enrollees at  that time? Are the administrators manipulating the Federal Student Loans? Please issue subpoena duces tecum in this regards. He asked Dr. Taylor about her program but did not apply in that program. He was on his final semester.

i. Can this Court integrate the erroneously filed case to  the federal case filed as the Supreme Court of NY   has  no jurisdiction on the matter ? . While Judge Eileen Rakower lucidly saw the injustice to the student, the NY Supreme Court First Department Appelate Division turned the world upside down and misapplied the wrong case law.

K.  Can this case be brought to the Federal Court in Washington. DC, as some of the professors at Touro College of Law are from the  US Federal Court. The Federal Court is located  approximately 1,000 feet away from the school .

l. Can  the plaintiff file a criminal case for Touro administrators' manipulations of the Federal Student Loans? The school manipulated the records of the 5 students ( see 2011-2012 student directory) to be able to get a federal student loans. There were no enrollees according to Daniel Derby in the LLM General Program. Did the 5 students listed on the LLM General graduated ( a subpoena duces tecum is requested for this puroose).

The plaintiff wants this court to know that the credentials that were submitted to Touro were the same credentials submitted to Thomas Jefferson School of Law LLM Program for

which he was about to finish an LLM degree. The plaintiff got academic scholarship using Novus University online JD Degree. The same Novus University online JD degree of the plaintiff was submitted to the Washington D.C. Court of Appeals and he was able to sit at the DC Bar exam .

## PRELIMINARY STATEMENT

4. To reiterate, one of the federal questions that is addressed to this Honorable Court is whether the administrators of Touro, a university and colleges ( collectively hereinafter called defendants), and are a recipients of federal government grants and loans, can return back a federal student loan that a student used to pay his tuition which was obtained and approved on the basis of his acceptance on the school's LLM program and after more than a year that he finished the program ( The student finished the degree in December 2011 but the school failed to grant the degree), the school paid back ( sometimes in late 2012 or 2013 ) the tuition to lure the plaintiff to settle the case on a failed arbitration case out of their own mistakes. On the proposed settlement, the school refused to grant the degree, thereby, the student refused to settle. They offered several amounts that was unacceptable to the plaintiff and since the plaintiff , purpose was to obtain a credential, to meet the needed qualification to sit in the DC and CA bar, as he lucidly stated in the two essays ( Exhibit 7 ) that the school required to sift the qualifications of entering LLM applicants . The plaintiff is requesting this Court to let Susan Thompson, PhD, Director of Touro Admissions, together with Daniel Derby, LLM, Director of LLM for American Studies Program to show to the Court the two essays with the unofficial transcripts of records submitted by the plaintiff before they scheduled the personal interview and hand the letter of acceptance for the LLM American Studies Program through subpoena duces tecum ( Exhibit 8  )

Lately, the defendants sent two letters, one of which they  demanded that the money they paid back to FAFSA must be paid immediately by the plaintiff otherwise the defendants will destroy his credit and character by July 8, 2016 (Exhibit 9). Blocking the plaintiff to take the bar, i.e., not issuing the degree and by destroying his credit. An action that defied the school existence.

This occurred when the defendants lost their right to arbitrate due to the counter charge against the student amounting to waiving their right for arbitration out of their own mistakes. With  the school capriciousness and arrogance, the defendants collectively, without the plaintiff consent, branded the student as a non-matriculated  ( the school's lawyers arranged a settlement without the plaintiff consent with his  lawyer and paid part

of the loan after being sued in the State Court and leaving him still with $8,500.00 outstanding debt, an amount equivalent to the first semester payment of the student, which came out initially from the pocket of the plaintiff while the student loan was pending). The presence of the student loan up to this time proved that the plaintiff was and still is matriculated student . The student started to pay back the student when they paid back portion of the loan. For 2012, 2014, 15 up to May 2016 the plaintiff paid his loan but was deferred  months ago.

Since, the school left the student still owing FAFSA loan amounting to $8,500, this means that the school still classified him as matriculated student as only matriculated student can get a Federal Student loans. With the school action, to  pay the tuition of the student loans, who did not ask them to do so, is not definitely the student fault. The school administrators manipulated the student loan system for economic benefits.

Would this Honorable Court agree to re-classify the student as a non-matriculated after the defendants voluntarily paid back part of the loan without his consent? And still left him with unpaid student loans up to this time. To date, the student still did not get his diploma after having paid all his financial obligations including his graduation fees, using FAFSA loans which the school paid back and then threatened to destroy the student credit and character. The $37,193 that they are forcibly collecting includes the graduation fee, portion of which were already paid by the student.  A sharp double bladed tool obstructing the plaintiff goal to advance in his career.  A goal defying and completely negating the purpose for which  schools are being established for. The plaintiff contended that the cover up actions of the administrators of the school elevated their acts into fraudulent  civil and criminal case. With this, a subpoena duces tecum is requested by the plaintiff to investigate the Touro University and Colleges administrator's manipulations of the Federal student loans system.

The defendants committed grave mistakes and cured their mistakes with another mistake by paying back the loans and then later on the defendants want the plaintiff to pay the amount outright. The plaintiff was already heavily wounded for not having been granted the diploma and now for the defendants actions to destroy his credit and character  is outrageously unreasonable. This is the school that the plaintiff thought that will help him to succeed in his plan to be able to sit in a bar, in DC and California and finished his CUNY dissertation to have a better credentials, but the school have obstructed all those plans for about five years now. They should have just denied  the plaintiff to be in their school , so that he should have pursued his degree elsewhere rather than subjecting the plaintiff to a series of unending nightmares. The degree was earned with time, money, sacrifice and effort. It is unjust to deny granting it. The plaintiff was not aware of their  recent program about non-matriculated students not until his last semester at the college. The goals of the

student was lucidly and vividly stated on the required two essays as a preliminary way to sift the applicant's qualification for the program.

It was the school's policy, not to let the student attend classes unless the tuition are paid before the start of the classes, initially, the student used his personal funds before obtaining the student loans. The defendants were paid using a Federal Student Loans and personal finance of the plaintiff part of that student loans were already paid by the student and thousands more were not paid.

About five (5) years later, the defendants on May 20, 2016, demanded that the plaintiff to pay a past due amount of $37,193 the amount was paid to them through FAFSA which they paid back after the defendants failed arbitration attempt. On June 28, 2016, the defendants, mailed a final notice stating that the stated amount will be referred to a collection agency which will destroy the plaintiff's credit rating, thus, destroying his character and fitness to take the bar ( the plaintiff was allowed to sit at the DC bar by providing, the copy of the case filed at the NY Supreme Court, but was not successful yet, See exhibit 10). The plaintiff never asked the defendants to pay back or return the money used to pay the tuition in the school. With this, a restraining order is requested by the plaintiff to stop the school from further damaging their helpless student.

The other question is whether the erroneously filed case by the plaintiff lawyer can be integrated in the federal court case as the case was filed in a Court without a jurisdiction? This case was erroneously commenced at the NY County Supreme Court on June 5, 2012, after the student exhausted all administrative remedies.  The plaintiff filed his federal income taxes in 2011, 2012, 2013, 2014, and 2015 in Las Vegas, Nevada. The case was initially filed as Article 78, and the school countered with multi-million dollar speculative charges against the student, which was later dropped as it was replete with lies and concocted falsified allegations. The case that was initially filed was amended by the lawyer hired by the plaintiff, and won the issues raised at the NY County Civil Court presided by Judge Rokower, i.e., to wit: Article 78; Fraud in the inducement; breach of contract; and, negligence misrepresentation. Judge Rokower perfectly discerned and correctly saw the ramifications of the erroneous injustice, arrogance and capriciousness of the school. While the case is still in process in the New York Supreme Civil Court, several amount were offered to Mr. Salvador, through his lawyers, but all the terms were unacceptable since the defendants do not want to grant the degree.

Touro brought the case to the New York Supreme Court Appellate Division. - First Department while the case is pending , the lawyer representing the plaintiff charged the plaintiff $16,000 which he paid and was forcing the plaintiff to accept the offer and get one

third of the amount which the plaintiff refused. Stewart Karlin alleged that the offer was $100,00 in which he wants $25,000 of that amount.

Meanwhile, the hypertension of the plaintiff went worst since it has been a long agony fighting for a degree which should have not happened should the defendants have denied his admission to the school outright. He was hospitalized for almost two weeks and incurred a bill of more or less $50,000 for emotional disturbance. While recuperating, the New York Supreme Court Appellate Division First Department decided in favor of the school who based their decisions on biased concocted lies defying basic rational logic which Mr. Salvador believed to be a compromised decision, knowing that the school has clout and the money. He asked the Court for reconsideration and was one day late for the response to appeal the case because he was sick . He also seek a permission that the case be brought to the Court of Appeals but the Court denied his petition. To date, Article 78 issue still remains in the New York Supreme Court, Civil Branch, which was filed by his dismissed lawyer.

At first, the plaintiff thought that a case need to be finished in the lower Court before it can be appealed. It must be noted that the plaintiff did not study the NY Civil Procedure. It was not a requirements of the JD degree.

The plaintiff contended that all the requirements of the programs were waived when he was personally handed the acceptance letter by two highly educated people from Touro. Dr. Susan Thompson and Daniel Derby, the LLM Director. Both of them knew that online JD graduates can take the DC bar and CA bar provided that a student meets some other requirements, such as attending for a year in an ABA approved law school.  Touro administrators knew these facts.

The NYS Supreme Court, Appellate Division, First Department did not consider the fact that to apply in this school, there was a preliminary procedure and that is by applying online, i.e., writing two essays concerning the applicant's qualifications and intentions or goals of taking the LLM. Along with this, the unofficial transcript of records were required to be submitted. Here, the applicant could be denied right away. The school can just write a letter saying that, "we are sorry that your degree is not acceptable in our program" , but not in the case of Leodegario Salvador. He was asked to face the interview and submit other documents, identifications, immigration status, personally assessing his proficiency in English, etc., after the preliminary screenings were done, He was also asked regarding the description of the courses that he took with the corresponding grades, which of course are not the official ones. These were provided to the committee on admissions ( Exhibit 11).

As regards to the Colleges and Universities that he attended, he submitted the course by course evaluation of the credits he took in the Philippines evaluated by the World Education Services. He requested, John Jay College, Graduate School and University Center and Novus University to send the official unopened ones to Touro College of Law. Technically, all the transcripts of educational records of the plaintiff were submitted, prior to the issuance of the letter of acceptance. The official, unopened copy were directly mailed to them.

Clearly, the NYS Supreme Court  Appellate Division First Department did not consider all those things. They misapplied the case of " Matter of Fulton-Montgomery Community College v. County of Saratoga, 80 AD3d 217 | 3rd Department2010] saying that if the school discovers that an admitted student does not meet those prerequisites, the school must have the right to deny a degree to that student, even if the discovery is made after the student has already completed the course. They use  Owens v. Parranillo, 365 F Supp 2d 353 |WD NY 2005|. In that case, the student lacks neither a GED nor a High School Diploma. In the case of the plaintiff, he has a JD degree that was recognized by the Appellate Court of Washington, DC and Thomas Jefferson School of Law ( In fact, he was awarded a partial academic scholarship to attend the LLM Program on the basis of the same degree submitted to Touro Law Collge). The NYS Supreme Court Appellate Division First Department reversed the preliminary decisions of Judge Eileen Rokower, which the plaintiff contended that this act was a blatant manifestation of unjust decision tantamount to reversing the world upside down. The school has super power while the student has no power at all. How could this Court turn around to blame the student rather than the school ? Besides the JD, the plaintiff has  MPA degree from John Jay College of Criminal Justice and finished the academic requirements of PhD. in Political Science at the CUNY Doctoral graduate center. The Owen case was misapplied. Along with the decision, was a statement that the Court believed was a concocted lie that the LLM Director thought that the plaintiff mistook that Leodegario Salvador was a graduate of the law university in the Philippines which was strange as the plaintiff disclosed that he was in the United States of America ( not Philippines)  for over 20 years waiting for the approved petition of his father in law who was a US Military Veteran. The queerest concocted self-serving statement was used by the court in its decision to reverse the preliminary decisions of Judge Eileen Rokower (Exhibit 12). Here, it was the school who manipulated the student records after being accepted in the program.

The plaintiff only mistake in the school was to let the other LLM Director Dr. Charlotte Taylor sign his last semester enrollment form as suggested by the registrar's office, Paula Kutch. It was in September 2011 that Daniel Derby became mad and that he said that there were no students enrolled at the other LLM Program headed by the other Director except those overstaying JD students who were unable to get FAFSA loans. The school apparently

placed JD students on the other LLM program to get the Federal Student loans as stated by his classmate Patricia Sturm. Surprisingly, when the plaintiff looked for the name of Patricia in the student directory for 2011-2012, he discovered that the school placed the plaintiff under the flock of Dr. Taylor's LLM program, which can never be because the plaintiff did not graduate from ABA school. This is where the school administrators need to be investigated in using the Federal FAFSA student loans. The plaintiff asked Daniel Derby when he was at the hospital if he can be placed in the other LLM program because the student did not know about the other program.

The school as a record of manipulations in this case in which Mr. Salvador was perplexed. They can also manipulate the Court and his lawyer. The court now blames Leodegario Salvador, rather than the school through their administrative officers headed by Daniel Derby and Dr. Susan Thompson and the chain of administrative command based on respondeat superior. Daniel Derby carried the power of the school, to either accept or deny an applicant in the program. It was never the responsibility or duty of the plaintiff to deny the school, the student has no power. This is how the case was decided, the Court put the blame on the student rather than the school... an upside down decision. This is the main reason that the New York Supreme Court Appellate Division First Department is not the appropriate venue for the case, the plaintiff felt that it was a biased Court or the judges may have not read the contents of the complaint unlike Judge Eileen Rokower.

While Judge Rokower saw the correct appropriate way on how to deal with the case, she was now blocked by the Higher Court on what she saw and knew on the case. Leodegario Salvador will not be intimidated with this though, he will try to find his way to obtain the appropriate justice, out of this injustice that he contended to be definitely wrong and unjust ( Exhibit 13).

Leodegario Salvador is afraid to appoint a lawyer who is interested of collecting money and compromise in the name of money. His lawyer was paid $16,000 and wants to collect more by obtaining 1/3 of the settlement, that is why he is trying to represent himself though he knows that the school is composed of a bunch of lawyers. It is justice that the plaintiff is fighting for.

Touro went to the extent of suing the school where the plaintiff graduated, but it must be noted that Leodegario Salvador was not the lone graduate of Novus University. There were other students who obtained their degrees ahead of him, have their LLM and JSD and became lawyers in other parts of the country. When Leodegario stated in his rebuttal that google Touro and that the accusation they claim against Novus is the same trademark they have, then Leodegario Salvador v. Touro NY Supreme Court Appellate Division First Department Decision was published online although the complaint lodged at Judge

Rokower Supreme Court was blocked. Let that be published so that the entire world will know what the student was complaining for. Leodegario Salvador disclosed all his credentials for the school to consider. He was denied to graduate after he finished the program. Where is justice in this case when the school has power to deny him at the beginning? The school here is not a Community College, it is a law school that is educating higher than JD Graduates composing of people who have higher than JD degrees. The plaintiff's credential was accepted by the DC Court of Appeals to take the bar and the same credential was used to gain acceptance by another ABA approved law school higher than the rank of Touro.

Touro has the lawyers, the money, the so many professors who are lawyers. Why did they give another online graduate , Vince Henderson, his LLM degree and not Leodegario Salvador? No online JD is recognized by ABA,  no matter how good they are? Why is it that Leodegario Salvador name appeared in the list of student directory for 2011-2012 as LLM General when in fact he never applied in that program? He only let Dr. Taylor sign his enrollment on his last semester because Daniel Derby was sick. Why is it that that his FAFSA loan was returned,  when the case was not over yet and  threatened the plaintiff to destroy his name with the credit reporting companies? The school clearly discriminated Leodegario Salvador only for the reason that he obtained Dr. Taylor's signature during his last semester of enrolling because Daniel Derby was sick .

The Plaintiff strongly believes that Touro has super power and influence on the NYS Courts and lawyers who can compromise justice, having strong clouts, money and power that the plaintiff would like to know if he can move the case in a Federal  Court that will not turn the world upside down. Washington, DC Court may be appropriate. This is a case of a powerless student v. a big university college of law with strong power, money and clout.

In addition, the New York Supreme Court has no jurisdiction over the case since the lawyer hired by the plaintiff committed the mistake of filing the case in New York Supreme Court rather than in the US Federal Court. The Plaintiff filed their  taxes at 4404 Grey Spencer Dr., Las Vegas, Nevada 89141 from Tax Year 2011, 2012, 2013, 2014 and 2015.

The plaintiff is requesting this Court to permit the case filed in NY Supreme Court in the Court Room presided by Judge Eileen Rokower to be integrated in the Federal Court case and declare the Supreme Court Appellate Division First Department as null and void as there was no trial that was ever made at the NY Supreme Court except all the preliminaries and that the Court has no jurisdiction as the parties involved are citizens of different states and Touro Law University and Colleges has its offices and main headquarters in many parts of the United States and in many other countries.

Technically, the University and Colleges are not to be blamed here. The people who are involved in the management of the school are to be blamed and not the school per se. The lawyer  that was initially hired by the plaintiff who was interested on his fee $16,000 collected fee has a conflict of interest as he was saying that this is livelihood and that he wants to receive $25,000 of the settlement and disregarding the plight of the helpless student. The plaintiff fired him as a result of this. He committed the mistake of suing the school rather than the people managing the school.  The school cannot be put to jail if the officers are the ones who committed the crimes.

Can this Court issue a subpoena duces tecum to Touro College of Law to show the Court that other prior students such as Vince Henderson an online graduate were not given LLM because they took JD online ? As this is a case of discriminatory policy as other online JD graduates accepted in their program were allowed to graduate but not the plaintiff, Leodegario D. Salvador. A discriminatory policy.

The plaintiff wants this court to know that the credentials that were submitted to Touro were the same credentials submitted to Thomas Jefferson School of Law LLM Program for which he was about to finish an LLM degree. The plaintiff got academic scholarship using Novus University online JD Degree. The same Novus University online JD degree of the plaintiff was submitted to the  Washington D.C. Court of Appeals and he was able to sit at the DC Bar exam

## FACTS OF THE CASE

5.  Plaintiff, Leodegario D. Salvador,  is domiciled 4404 Grey Spener Drive Las Vegas, NV 89141,  Clark County, City of Las Vegas, State of Nevada ( See income tax return and his health insurance card).

6.     Defendant, Touro College and University, are colleges and a university that have several headquarters in NY, NV, CA and other parts of the world ( They also have online degrees worldwide)  They are recipients of federal student grants and loans and within the jurisdiction of this Court. In addition, defendant Touro College Jacob D. Fuchsberg is an ABA approved law school ( collectively hereinafter called defendants).

7.     Defendants, administrators live in various parts of the country, and in other countries besides,  California, New York, Nevada ( Former Dean Raful has several out of New York Addresses). Touro has also online university/colleges worldwide.

8.   Plaintiff, after finishing his online Juris Doctor degree at Novus University decided to take the LLM program at Touro to be able to complete the requirements needed by Washington, D.C. to be able to sit at the bar exam. He also planned to take the bar in CA. This goal was fully disclosed on the essay required by the school as part of the admission's requirements submitted online prior to the personal interview.

9.   Plaintiff underwent a rigorous admissions screening, headed by two prominent highly educated administrators employed by the college,  Susan Thompson, PhD. and Daniel Derby, LLM. The school administrators claimed that they have very high standard.

10.  Plaintiff submitted two essays,  elucidated his goals and disclosed all his educational qualifications for the LLM program including all necessary back-up documentations, transcripts from all prior schools attended , recommendations, etc. Susan Thompson has all the emails and the photocopies ( subpoena duces tecum is requested).

11.  Plaintiff was personally interviewed, more than adequately assessed for his educational qualifications, communication skills, immigration status, personality and character, not by one person but two veteran students' screeners aided by a number of many assistants who are presumed to be college graduates as well.

12. Plaintiff disclosed that he was in the country for more than two decades awaiting for his permanent residence card, he being petitioned by his US Veterans father in law and that he was unable to visit the Philippines for those long years. He submitted his temporarily approved residence card and his New York driver license as his identifications ( Leodegario Salvador can now apply as a US citizen). Waiver forms for health examinations and others were also filled up.

13.   Plaintiff was personally given his LLM Program acceptance letter and was congratulated by the two schools directors of the program, Dr. Susan Thompson and Daniel Derby.

14.  The issuance of the written letter of acceptance by the director of the program with the presence of the admission's director conclusively waived all the requirements of the school for the LLM program wherein he was accepted. Unlike in the Owen's case, Leodegario Salvador, presented a JD online degree and should the school determined that it was not acceptable then they could have denied the applicant right away, considering that there were two not one who screened the applicant simultaneously. The people who made the decisions were people who transcended the associate degree from a community college.

People who finished more than a JD degree, people who have a PhD. degree with the entire full force power of a big college and university as they claimed.

15. With the properly signed formal acceptance letter of admission, plaintiff was accepted in the LLM program resulting in an implied contract in fact, between the plaintiff and the defendants based on terms and conditions for graduation offered by the defendants at the time of enrollment. If one put his shoes on Leodegario and imagine his frustrations when he drove to the school for the entire 3 semesters  to Long Island with all the frustrating traffics back and forth and  end in endless court battles, in erroneously selecting a school that was supposed to educate Leodegario , one will definitely end in hospital. Leodegario Salvador did not go to the school to be dragged to the Court System and to be lambasted around the world for publishing the result of the Supreme Court Appellate Division First Department Decision without publishing the determination of Judge Eileen Rokower ( publish that to have the balancing factor so that the world will know Touro).  Student was blamed for a thing he did not intend to do. The plaintiff's qualifications were carefully and meticulously sifted only to find out that he was  dragged to the Court including the school where he came from.

16. Plaintiff duly enrolled for the Spring Semester 2011, Summer 2011 and Fall 2011,  using FAFSA, a federal student loan, the processing of which passed through the office of the financial aid director, Michelle Kaminski  each semester. She should have blocked the application for FAFSA, if the student was un-matriculated as alleged.

17. As regards to the distorted claim regarding the transcript of records of the plaintiff from Novus University, the unofficial transcript of records were submitted along with the course by course descriptions of the subjects taken by Leodegario Salvador with the corresponding grades and that there was no such subjects taken concerning the Philippines Constitution , neither the Canon Laws for the Catholics nor Sharria laws for the Muslims in the South ending in a LLB degree rather than a Juris Doctor Degree. Unofficial transcripts were at the admissions office and the registrar's office even before the scheduled interview and , that forms were filled up by the plaintiff sent to the schools that he attended so that the schools will send  the official unopened transcripts to be delivered to the registrar office, headed by Paula Kutch. Leodegario Salvador never misrepresented himself. The school can torture him to death and he will maintain that he never misrepresented himself. Everything were disclosed appropriately.

18.  Contrary, to the claim of Touro, that the degree granted by Novus University was a bogus degree, Leodegario Salvador, used the same transcripts and credentials at the Graduate School of Thomas Jefferson School of Law (TJSL) and was given academic scholarship on the basis of the same degree submitted to Touro ( Exhibit 14).  The plaintiff

borrowed $40,000 from Sallie Mae to finance his LLM studies because of the failure of Touro College to issue the degree. He may already have the LLM degree, when this case will be over.

19. The plaintiff degree was also accepted by the DC Court of Appeals, he being able to sit in the DC bar exam, not a sham degree as contended by the NY Supreme Court Appel late Division First Department and Touro administrators.

20. Touro noted on the application of Leodegario Salvador that he finished Bachelor of Arts at Northeastern College and graduated as second honors ( Magna-cum-laude) and was awarded a gold medal as scholar of the year distinctions. He finished the academic requirements for Master of Arts in Mass Communication at the University of the City of Manila before he came to the United States. He was an academic scholar at Laredo State University as an MBA student. He shifted his specialization to Master of Public Administration at John Jay College, City University of New York for which he was awarded the degree of Master of Public Administration. He also disclosed that he finished the academic requirements for PhD in Political Science at the Graduate Schools and University Center (GSUC) at the City University of New York and that when the economy of the United States went down in 2008, he tried to upgrade his qualifications by enrolling at a Juris Doctor program online which he finished with a Summa-cum-laude honor. These were the qualifications sifted by the two brilliant Touro directors waiving their requirements for the LLM Program and accepting Leodegario Salvador, as their student. What made Daniel Derby to change the status of the student after the student let Dr. Taylor signed his enrollment form because he was in the hospital upon then advise of Paula Kutch is still a mystery to the plaintiff ( The entire educational credentials of the plaintiff were enclosed , Exhibit 16) .

21. During the last 2011 Fall Semester, Daniel Derby was hospitalized and that Leodegario Salvador cannot enroll without anyone to sign his enrollment form. He tried to reach, Daniel Derby, but he was not able to get the correct advise and signature because he was at the hospital and the school semester has started. Leodegario sent email to Daniel Derby.

22. He was advised by the office of Paula Kutch to get the signature of Dr. Chalotte Taylor to be able to enroll and so his last semester of enrollment was signed by Dr. Taylor which was later arbitrarily modified by Ms. Kutch and Daniel Derby. There seems to be an epidemic of manipulations in the school. They were given too much discretions and power without supervision.

23. Unknown to everyone in the school Prof. Derby told Leodegario Salvador that the LLM Program headed by Dr. Taylor has no enrollees at all, but Leodegario Salvador got the

feedback from Patricia Sturm, his classmate at Criminal Procedure, that the LLM general was used by the school for overstaying JD student to get a Federal Student Loan. This is definitely not legal to do. Leodegario did not concoct this claim. His classmate was not on the group of LLM but on the JD according to her. See the student directory for 2011-2012 . How did Leodegario's name was placed on the LLM General Program? A mystery. Can the Court determine who was behind this manipulations for Federal Educational Loans. The school must come out with the truth about this. There were five student listed on the directory of 2011-12 who were at the General LLM Program. Leodegario although listed was not supposed to be listed there.

24. Lately, when Leodegario Salvador looked at the 2011-2012 student directory, Leodegario Salvador was placed in the list of those students under the LLM general which he knows he cannot be as those are supposed to be students who are graduates of ABA approved school. He never applied in that program. This is contrary to the acceptance letter which he received. This may be one of the reasons why Daniel Derby got mad with Leodegario Salvador. It was a mystery that the plaintiff name was listed there. He did not know who placed his name on the other program. He did not even know who is the director of the other program not until Daniel Derby got sick.

25. Daniel Derby upon coming back to the school was bitter that Leodegario Salvador did not know the reason. Leodegario just thought that Daniel Derby took the wrong medicine when he reported for late duty after more than a week after the opening of the school term on the last semester attendance of Leodegario Salvador on the school. He seemed to be a gentleman whose handshake, letter of acceptance and smiles were truly deceptive. Leodegario, the student trusted his words, handshake, and acceptance letter. he knew that the diploma cannot be used in the NY bar and he said it will be an acceptable credential in DC and CA. Concerning the travel he made in the Philippines, it was a topic not related to the acceptance in the program. Immaterial to the LLM attendance as the plaintiff was in the United States for years, for over two decades when he enrolled in the program. Derby knew this.

26. The decision of Daniel Derby in not allowing Leodegario Salvador to graduate after seeking the signature of Dr. Taylor is mind boggling. The other thing that Leodegario noticed was that his name was placed on the list of those who are taking general LLM degree as shown on the 2011-2012 Touro Law student directory. As to why this happened, he did not know the reason. The theory is that most likely if Daniel Derby is correct that there were no enrollees at the other program and the claim of the plaintiff's classmate was was also correct, then some students names were put by the school in the other program, to make it appear that there are some students in that program, although none (zero) as claimed by Daniel Derby. The plaintiff has no reason to concoct this. The Court must

investigate this as this may be the reason why the plaintiff was placed in trouble. This was a manipulation of the Federal Student Loan Program by Touro.

27. Lack of appropriate supervision of the administrative staff makes the President of the University and other down the line made them liable to this wrongful act based on respondeat superior.

28. Paula Kutch arranged for graduation interview for Leodegario Salvador, but Paula was not able to conduct the interview since Derby queerly hid the records of Leodegario Salvador, for unknown reason, as to when he returned the records back to the registrar was not known to the plaintiff, Paula conconted lies as to when Derby returned the file eventually. Why did she need to conduct the interview when she claimed that it was early September of 2011 that she knew the problem? If that was true. Paula may also be sick and confused. She did not even know that the student records of Leodegario Salvador were missing based on her email to Daniel Derby. Paula affidavit misled the Court. Paula sent Leodegario to Charlotte because Daniel was sick, she never mentioned that Leodegario did not even know Charlotte not until she sent her there. She claimed that she knew the problem in September 2011 but She scheduled the graduation in January 19, 2012. She emailed Daniel Derby she cannot find him and she said she completed the evaluation that day. Paula was really sick too, she claimed the plaintiff applied at the LLM General Program. She may have a hand on placing Leodegario Salvador on the LLM General Program depicted on the student directory for the year 2011-2012. Leodegario was there on the scheduled interview for hours, she cannot find the student file and cannot find Daniel Derby. Her affidavit was inconsistent, misleading and replete with lies.

29. Leodegario Salvador was not awarded the degree and so he reached out for several higher officials of the University and failed. He sent emails to the deans but was eventually arbitrarily denied for graduation by Paula Kutch apparently after a series of the higher up meetings the defendants gave awarded a new brand name which he did not asked nor completely comprehend. A non-matriculated student as applied to doctoral students at GSUC means that a student can only take one or two courses with a B average grade to be accepted in a program. At GSUC, a student is barred from taking more courses, if he is not accepted and fulfill the application requirements of the program. The plaintiff attended the school as matriculated and was disclosed. He did not go there as non-matriculated. He used Federal Student Loan and should have not been allowed to do so, if he was non-matriculated. He still owe the Federal government up to this time.

30. Meanwhile, a classmate of the plaintiff, Vince Henderson, who pursued a doctoral program, at Northeastern University was also an online degree graduate and was awarded LLM by Touro just a semester ahead of Leodegario Salvador. Assuming that the online

school where Vince came was better than the school where Leodegario came, it must be noted that no JD online school was accredited by ABA. Why, was Leodegario Salvador discriminated? He did not understand.

31. After the failed bid of Touro to arbitrate the case and paying part of the Federal Student loan of Leodegario Salvador to convince him to settle the case a harassing collection letters were sent to him on May 20, 2016 telling that he had  past due amount of $37,193. A final notice was sent to him on June 28, 2016, that the school will destroy his credit if the amount is not paid.  The plaintiff wants to pay the government loan directly and not Touro. He  got federal loan to attend the school besides, the school loan was deferred by the present school that he is attending.

32. Leodegario Salvador did not ask Touro or consent to Touro in paying his loan incurred in attending the Touro LLM program. The school arranged to pay $100,000 to his lawyer which Leodegario Salvador declined. They lost their right to arbitrate. His lawyer wants to get $25,000 as his 1/3 compensation. The plaintiff declined. His lawyer was paid $16,000 even before completing the job.

33. The nightmare from the year 2011 up to the present time, that Leodegario Salvador got from Touro aggravated his hypertension that made him additional cost for hospital and doctors visits amounting to more or less $50,000. The emotion is still fresh as Leodegario tried to recall all of this painful agony .

34. Prof. Daniel Derby's concocted claims that he thought Leodegario Salvador was a graduate of one of the Universities in the Philippines . This was  a lie because graduates of the Philippines Universities are not generally, required to take LLM to be able to sit in a bar exam, besides, most of their degrees are still LLB rather than JD. In addition, Leodegario Salvador disclosed that he was in the country for over 20 years and did not visit the Philippines at the time. Susan Thompson, Paula Kutch and Daniel Derby knew that I was in the country for so many years. The Supreme Court Appellate Division First Department believed this concocted lie when in fact res ipsa loquitur revealed that the state of mind of the LLM Director was apparently  incongruous. A very, frustrating injustice when incongruous lie were used to base a court decision and the incongruous swayed  and twisted reality upside down . Leodegario Salvador disclosed that he just finished his JD online school  and Daniel and Susan  were provided with unofficial transcript of records with the course by course descriptions of the courses taken by the plaintiff even before the interview was set. He also knew that the plaintiff was in the country for 20 years awaiting for the approved petition of his father in law who served the US military during the WWII . Daniel Derby knew that together with Dr. Susan Thompson, Paula Kutch and the Director of Financial Aid as they took the plaintiff's temporary  permanent resident

immigration card along with his NY Driver's license. These were the apparent things that Judge Rokower saw but twisted by the other Court.

35.. Leodegario Salvador after almost 5 years of waiting for the degree and spending over $75,000 in tuition ( $40K +), stipends ($35K+),  lawyer ($16K) and medical costs(over $50K). Mr. Salvador decided to take another $40,000 from Sallie Mae student loan to be in another LLM program at Thomas Jefferson School of Law, rather than be in doctoral program or finish his PhD dissertation at CUNY. The Federal loan was differed at the present time because he is still in school.

36. Leodegario Salvador was also able to sit to the Washington, D.C. bar exam but was not lucky yet to pass the bar, having so many stressful experiences, foremost of which is the Touro case. Rather than reviewing, he spent so much time to write and recall the details of what Touro did and was doing not to educate him as expected but to torture him.

37. As regards to how the following accused are involved, please note the following, to wit:

a.    Dr. Allan Kadish – for failing to supervise his administrators,
(respondeat superior) as,
President and CEO of
Touro University and Touro Colleges
1310 Club Drive, Vallejo, CA 94592

b.    Dean Lawrence Raful as Dean of the College of Law at the time
Jacob D. Fuchsberg Law Center (Former Dean- Failure to supervise)
225 Eastview Drive, Central Islip, NY 11722 (Has unknown
other states addresses)

c.    Daniel Derby - He was the LLM Director who admitted the
Plaintiff - concocted lies about the plaintiff and misled the
Court. Director of the LLM  Program.  The gentleman who
gave the letter of acceptance personally to the plaintiff.
225 Eastview Drive, Central Islip, NY 11722

d.    SusanThompson, PhD. - She was one of the leading  screening person, She got the essays and all unofficial transcripts (All emails were with her)
Director of Admissions
225 Eastview Drive, Central Islip, NY 11722

e.    Paula Kutch - multiple role in covering up the mistake of the school

Registrar – She concocted lies in her affidavit.
225 Eastview Drive, Central Islip, NY 11722

f.   Michele Kaminski , heads the school Government loans
that the school manipulated, appropriate documents were
submitted to her office, allowed officials to manipulate the
tuition already paid through FAFSA – for failing to stop fraudulent Federal Loans
Practices.
Director of Financial Aid
225 Eastview Drive, Central Islip, NY 11722

g.   Yelena Elkina for sending harassment letters
Collections Department – For Harassment and Destroying the character and Credit of the
plaintiff.
500 7th Avenue, 5th Floor -Bursar
New York, NY 10018

h.  Touro University and College Vice President, Provost and all Touro University and
College Board of Governors for failing to supervise  Dean Raful, Daniel Derby, Susan
Thompson, & Jane Does and John Does ( Respondeat Superior).

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACT-ART 78

38. Plaintiff,   LEOEGARIO D. SALVADOR, (hereinafter at all times mentioned
"Plaintiff") and is a resident of Clark County , las Vegas Nevada.

39. Defendant, TOURO is a college and university and is a recipient of federal, state and
local government grants, loans, etc. and is within the jurisdiction of this Court and
respondent TOURO COLLEGE JACOB D.FUCHSBERG LAW CENTER is an ABA
accredited law school.(Collectively hereinafter "Respondent")

40. Plaintiff had completed an application to the LL.M. program, and provided all the
necessary back-up documentation including certified transcript from all prior school
attended, recommendation etc…

41. Plaintiff was accepted into the LL.M. program resulting in an implied contract in fact between Petitioner and Respondents based on terms and conditions for graduation that were offered by the Defendants at the time of enrollment.

42. Plaintiff duly enrolled for the Spring Semester 2011.

43. Defendants breached its own terms and conditions set forth for graduation and acted arbitrarily and capriciously, irrationally, and in bad faith toward the plaintiff while he was enrolled at Touro. Plaintiff academic performance met Defendants' academic requirements for graduation. Plaintiff also met his financial obligations .

44. Despite the fact that Plaintiff met all the academic requirements, and financial requirements, Touro breached the agreement and has otherwise acted arbitrarily and capriciously, irrationally, and in bad faith, by refusing to confer an LL.M. degree when he in fact , met the requirement of the program for graduation. See a true copy of the final determination dated February 8,2012 as Exhibit "A" implicitly acknowledging he had done so.

45. In an Article 78 proceeding for judicial review of a determination of an educational institution, the standard to be applied is whether the action taken by the institution is arbitrary or capricious, or without rational basis or whether the instituition had acted in good faith *Tedechi v. Wagner College,supra;Pell v.Board of Educ.Union Free Sch.Dist.No. 1,34 N.Y.S.2d 222,356 N.Y.S.2d 833,313 N.E.2d 321 [1974].*The arbitrary or capricious test has been said to chiefly relate to whether a particular action should have been taken ,is justified or is without a foundation in fact or without a sound basis in reason.

46. It is a matter of essential fairness in the somewhat one-sided relationship between the institution and the individual that when a university had adopted a rule or guideline establishing a disciplinary procedure ,that such procedure be substantially observed and that in conducting the inquiry,the university must proceed in good faith see *Tedechi v. Wagner College*,49 N.Y.2d 652,427 N.Y.S.2d 760,404 N.E.2d 1302 (1980); Matter of Gray .Canisius Coll of Buffalo,76 A.D.2d 30,430 N.Y.S.2d 163 [1980]).

47. It is well established that judicial review of determinations of educational institutions as to the academic performance of their students can be challenged. The academic institution academic determination must not be arbitrary and     capricious, irrational, made in bad faith, unconstitutional, or contrary to statue Tedeschi v.Wagner Coll., 49 N.Y.2d 652,427 N.Y.S.2d 760,404 N.E.2d 1302 (1980); Matter of Olsson v. Board of higher Educ. of City of N.Y.,49 N.Y.2d 408,413-414, 426 N.Y.S.2d 248,402 N.E.2d 1150; (1980)  Matter of Susan M. v. New York Law School, 76 N.Y.2d 241, 556 N.E. 2d 1104,557 N.Y.S.2d 297 (1990)

48. It is uncontroverted that plaintiff initially was governed by the Student Handbook that he was given by TOURO that outlines the matriculations and graduation requirements he was subjected to. The contract was based on the terms and conditions for graduation that were offered by the defendant at the time of plaintiff's enrollment.

49. Further, it well settled law that "[w]hen a student is admitted to a university an implied contract arises between the parties which states that if the student complies with the terms prescribed by the university, he will obtain the degree he seeks". Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654 (2nd Dept.1987). The rights and obligations of the parties to this contractual relationship flow from "the university's bulletins, circulars and regulations made available to the students, [which] become a part of this contract. Id., see also Sweeney v. Columbia University,704 N.Y.S.2d 617 (2nd Dept.2000). Here, Plaintiff's contractual relationship with TOURO included the specific provision that included that if completed the necessary course work successfully, he would be conferred a degree. Changing these specific requirements after performance, he would be conferred a degree.

50.  Once duly enrolled, only specific promises set forth in a university's bulletins, circulars, and handbooks, are material to the student's relationship with the school, can establish the existence of an implied contract.

51.  A student may have a breach of contract remedy against a university, based on an alleged adverse academic decision, only where the challenged determination was arbitrary and capricious, irrational, made in bad faith or contrary to Constitution or statue. Flomenbaum v. New York University,89 N.Y.S.2d 493 (1st Dept.2009). The decision not to confer an LL.M. degree despite the fact Petitioner met all the requirements for graduation is in effect to alter the terms of his implied contract without consent, and was arbitrary and capricious.

52.  The decision to arbitrarily alter the terms of the implied contract create the basis for judicial review. *In Brown v. Albert Einstein College of Medicine of Yeshiva University*, 568 N.Y.S.2d 61 (1st Dept.1991), the court opined that courts are limited in their review of matters of academic judgment to issue of whether institution has acted in good faith or irrationally or arbitrarily. *Id.* Since TOURO acted in an arbitrary manner by refusing to award the LL.M. degree, its judgment is now a question for the courts.

53. During this time frame, Plaintiff has exhausted all internal administrative remedies and has satisfied all conditions precedent prior to filing a lawsuit.

54.  Based on the foregoing Defendants breached the implied in fact contract and acted arbitrarily and capriciously and in bad faith by refusing to confer an LL.M. degree.

55.  This is the first application for relief requested herein.


AS AND FOR A SECOND CLAIM FOR RELIEF-FRAUD IN THE INDUCEMENT

56.  Plaintiff repeats and repeats and realleges each and every paragraph herein as if fully set forth at length.

57. Plaintiff completed an application to the LLM program and provided all necessary documentation including transcript from all prior school attended and recommendation. Petitioner holds a Bachelor of Arts from NORTHEASTERN College and Master in Public Administration from John Jay College of Criminal Justice. He also completed the academic requirements towards a Ph.D. in Political Science at CUNY.

58. Plaintiff applied for admission to LLM program at Touro Law School in January 2011. He fully disclosed his credentials when he applied at Touro Law School.

59.  Plaintiff relied completely on the expertise of the admissions committee when he was accepted into the program and their representations that he was qualified to enter into the program.

60.  The only reason why Plaintiff was accepted into the program was to collect his tuition and fill a seat.

61. Although Plaintiff met the academic requirements for graduation , met the financial obligations for graduation, including the graduation ceremony fee, Defendants   knew at the times that it was not going to allow Plaintiff the opportunity to graduate in order to fill a seat and obtain his tuition but still in bad faith made the representation to induce him to attend the school.

62.  In fact, due to this misrepresentation, Plaintiff enrolled in the school, paid the tuition and successfully completed all the course work and was otherwise eligible to graduate.

63. The representation made by Defendants that he would meet the school requirements for admission induced Plsintff to enroll in the school at considerable expense and cause him a substantial diminution of earning while attending school full -time for approximately one year.

64. A significant portion of Petitioner's tuition and fees were paid with interest bearing federal student loans amounting to $68,398.00.

65. On January 26,2012, he was informed that Novus Law School it is an online school does not qualify as a foreign law school even though it has offices in the Philippines, India, Singapore and despite the fact that Defendants knew that when admitting Plaintiff.

66. On February 8, 2012, the registrar from Touro Law School sent Plaintiff a letter stating that he is only entitled to a transcript and alleges that he did not properly investigate the requirements of their program.

67. As a result of Plaintiff's reasonable reliance on Defendants's representations, (inducement), Plaintiff has been damaged in excess of two hundred thousand dollars and is entitled to punitive damages in the amount of $5,000,000.00

## AS AND FOR A SECOND CLAIM FOR RELIEF -BREACH OF CONTRACT

68. Plaintiff repeats and repeats and re-alleges each and every paragraph herein as if fully set forth at length..

69. Plaintiff was accepted into the LL.M. program resulting in an implied contract in fact between Plaintiff and Defendants based on terms and conditions for graduation that were offered by the Defendants at the time of enrollment.

70. Plaintiff duly enrolled in the LL.M Program for the Spring 2011 semester.

71. Plaintiff duly performed all the terms and conditions of the contract on his part including completing all courses required for said LL.M Degree and paying all tuition fees and charges requested by Touro.

72. The student complied with the terms prescribed by Touro.

73. Notwithstanding the fact that the student performed the terms and conditions of the contract, the college neglected and refused to do the same on its part in that, among things, it took Plaintiff's money, allowed him to remain and waste his time in whole or in part and refused to confer on him that which it promised, namely the degree.

74. Implicit in all contracts is a covenant of good faith and fair delaying in the course of contract performance. Encompassed within the implied obligation of each promisor to

exercise good faith are the promises which a reasonable person in the position of the promise would be justified in understanding were included.

75. The college did in fact fail to follow its own rules.

76. The school is withholding Petitioner's diploma on baseless grounds that Plaintiff's law school does not qualify for Touro's LL.M Degree from Touro Law School.

77. Plaintiff has complied with the terms prescribed in the contract between Plaintiff and Touro

80. As a result of Defendants' breach of contract, Plaintiff has been damaged in career lost earning excess of $2,000,000.00 dollars and lost pay while in school, tuition, interest and other damages.

### AS AND FOR A THIRD CLAIM FOR RELIEF- NEGLIENCE

81. Plaintiff repeats and repeats and re-alleges each and every paragraph herein as if fully set forth at length.

82. Defendant's acts and omissions alleged above involved a want of ordinary care. Defendant's had a legal duty to administer the LL.M program, and to hire and retain faculty and staff to administer the program, according to a standard of conduct that is reasonable for LL.M programs in the United States. Defendants had a legal duty to hire and maintain a faculty and staff according to a higher standard of care and conduct met and owed by a manager or employee claiming to possess the experience, expertise, and specialization of a law school. Defendants owed a duty to Plaintiff not to hire and retain negligent faculty and staff. Defendants owed a duty to supervise their faculty and staff.

83. A reasonable person or entity in Defendant's position would not have acted as Defendant did, and would have acted in a way that Defendant did not.

84. Defendant knew or should have known with reasonable certainty that their acts would cause Plaintiff to suffer damages as set forth above.

85. Defendants' failure to meet the standard of care and conduct proximately caused the harm stated in this complaint.

86. Defendants' conduct was wanton and reckless and defendant is liable for the foregoing act and omissions.

87.As a result of Defendants' negligence, Plaintif has been damaged in career lost earning excess of $2,000,00,00.000 pay while in school, tuition, interest and other damages.

### AS AND FOR A FOURTH CLAIM RELIEF -NEGLIGENT MISREPRESENTATION

88.  Plaintiff repeats and repeats and re-alleges each and every paragraph herein as if fully set forth at length.

89.  Touro has a special relationship with Plaintiff and its other students which give rise to provide these students with correct and complete information. Touro represented its knowledge of its own requirements and expertise in explaining them to plaintiff at the time of advertising the LL.M program , and/or providing education service to them. Touro knew or should have know that petitioner was relying upon it to provide complete and correct information about the requirement of the LL.M program, rather than misrepresenting these requirements.

90.  Touro made oral and written representations of existing fact to petitioner that falsely characterized the requirements of the LL.M program.

91.  Touro had a duty to fully disclose the graduation requirement for the LL.M program and their failure to disclose such to Plaintiff was false and misleading.

92.  . Touro's negligent misrepresentations as to its LL.M program to Plaintiff was the proximate cause and determinative factor in causing the loss by plaintiff of an LL.M degree

93.  Touro's negligent misrepresentations to Plaintiff were reckless and wanton.

94.  As a result of  Defendants' negligent misrepresentation, Plaintiff has been damaged Plaintiff has been damaged in career lost earnings of  $2,000,000.00 dollars and lost pay while in school, tuition, interest and other damages.

WHEREFORE, Plaintiff demands damages and equitable relief the defendants, including but not limited to a declaration that the actions taken against the Plaintiff were arbitrary and capricious, special damages for a lost career as a result of not obtaining an LL.M. degree including the salary Plaintiff would have earned if he was conferred an LL.M. degree and other damages, equitable relief including compelling TOURO to award Petitioner an LL.M. degree, punitive damages, and other damages together with costs of suit and such other and further relief as the Court deems just and proper under the circumstance.

In addition, it is also prayed that the Court look into the fraudulent practice of the school using Federal Student loans and restrain Touro from destroying the credit of the plaintiff and  move the case to a Court that is unbiased and free from the strong super influence of Touro Law  University and colleges.

Leodegario D. Salvador – Plaintiff
Pro-Se

Dated :

July 28, 2016

(702) 522-7878
(718) 374-2635